IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KRISTEN ROWLETTE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs | ) Civil Action No. 2:26-674 |
| | ) |
| | ) Chief United States Magistrate Judge Dodge |
| ALLEGHENY COUNTY, | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM OPINION**

Plaintiff Kristen Rowlette brings this civil rights action against Defendant Allegheny County arising arise out of her employment as a patrol officer with the County's police department. She alleges that she was subjected to discrimination based on her sex and age and a sexually hostile work environment, culminating in her termination on April 3, 2025.

Pending before the Court is Defendant's partial motion to dismiss (ECF No. 19). For the reasons that follow, the motion will be denied.[1]

## I. Relevant Procedural History

Plaintiff commenced this action against the Allegheny County Police Department on April 20, 2026 (ECF No. 1). On June 9, 2026, she amended the Complaint to name Allegheny County instead of the Allegheny County Police Department (ECF No. 14). Federal question jurisdiction is based on the three civil rights statutes she invokes, 28 U.S.C. § 1331.

Count I asserts claims of sex discrimination and a sexually hostile work environment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e-17 (Title VII).

[1] The parties have fully consented to jurisdiction by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). (ECF Nos. 26, 27.)

In Count II, the Amended Complaint asserts a claim of age discrimination in violation of the Age Discrimination in Employment Act, 29 U.S.C. §§ 621-34 ("ADEA"). Finally, Count III of the Amended Complaint alleges interference and retaliation claims under the Family and Medical Leave Act, 29 U.S.C. §§ 2601-54 ("FMLA").

According to the Amended Complaint, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC) on September 10, 2025 and the EEOC issued her a Notice of Right to Sue on January 22, 2026. (Am. Compl. ¶ 12.)

On June 24, 2026, Defendants filed a partial motion to dismiss (ECF No. 19) Counts I and II only which has been fully briefed (ECF Nos. 20, 28, 29).

## II. Factual Allegations in the Complaint

Plaintiff commenced her employment with Defendant in January 2022. She spent the first seven months of her employment at the Police Academy. During her initial field training, she was routinely paired with non-designated training officers rather than Field Trainers as required by Defendant's training procedures. In contrast, younger male officers were properly paired with designated Field Trainers. This delayed her advancement from the usual four months to six months. (Am. Compl. ¶¶ 13-15.)

Plaintiff alleges that she was subjected to a consistent and blatant level of scrutiny that her similarly situated younger male colleagues did not experience. Nearly every decision she made was met with skepticism and hostility by her supervisors, particularly Division Commander Kenneth Ruckel and Sergeant Kristine Thornton. She was routinely called into meetings with Ruckel so often her coworkers joked and made comments about her frequent visits to his office. During these meetings, she was questioned regarding her fitness for her position, reprimanded for performing routine arrests and made liable for incidents that were intentionally exaggerated and

misinterpreted by Ruckel, who used these exaggerations as an excuse to discipline her. (*Id.* ¶¶ 17-20.)

Plaintiff was denied the opportunity to attend a "Bigs and Blues" community event, a popular youth mentorship program. While she signed up to attend, at the last minute she was barred from attending even though younger male officers were permitted to do so. (*Id.* ¶ 22.)

In July 2023, Plaintiff was working at a wave pool when a patron stole another's wallet. She was handling the situation but when Patrol Officer Morrow arrived, he escalated the interaction. He began to contradict her, "borderline pushed her to the side" and completely took over the situation. At the suggestion of a fellow female officer, she filed a "Form 20" report against Officer Morrow, who was younger than her, but instead of reprimanding him, Defendant reprimanded her and forced to her to participate in retraining, claiming she "violated protocol." (*Id.* ¶¶ 24, 138.)

Later that month, Plaintiff was working at the Pittsburgh International Airport when Officer Joe Gannon, who was younger than her, aggressively approached her. He screamed that she had moved his firearm inside the firearm safe, saying "don't touch my fucking things bitch" while waving his finger in her face. Plaintiff was shaken by this encounter, particularly since she had not touched his firearm, and reported the incident to Sergeant Robert Poloka, who essentially supported Officer Gannon's conduct. Younger male colleagues who were involved in similar circumstances were not reprimanded or administered retraining like she was. (*Id.* ¶¶ 25-29, 139.)

As a result of these incidents, Plaintiff began to experience severe symptoms of mental fatigue and sought the assistance of a psychiatrist, who diagnosed her with insomnia and anxiety. During one shift, she experienced a severe manifestation of these conditions when she felt chest pain and shortness of breath and had to be transported by ambulance. (*Id.* ¶¶ 30-32.)

Because episodes like this continued in 2023 and 2024, she intermittently requested FMLA leave to seek treatment. Her supervisors and coworkers were displeased and referred to her taking "time off." (*Id.* ¶¶ 33-36.)

Beginning in January 2025, Defendant began using her disabilities and invocation of leave when conducting her yearly evaluations. Her 2025 evaluation falsely stated that she used 43 days of leave under the FMLA and accused her of avoiding her duties and "pushing her work onto others." She raised this with the sergeant who provided her with the evaluation (not Sergeant Poloka, who prepared it). He responded by saying "I'm not sure when that came from" and advised her to contact Poloka. Instead of addressing this issue, he reprimanded her for an arrest in July 2024, and upheld the evaluation. (*Id.* ¶¶ 38-43.)

On February 20, 2025, Plaintiff was reviewing active arrest warrants and case reports for Allegheny County when she noticed that a former friend of hers had been arrested for sexual crimes. She contacted the investigator assigned to the case, Detective Hildebrand, and spoke cordially with him about the matter. The next day, she arrived at work to find that she could not log into her computer. Shortly thereafter, she received a call that Ruckel wanted to see her in his office. She arrived in his office and was met by Ruckel, Painter, Thornton and her union-affiliated attorney. Ruckel handed her an envelope and said it was "from the Superintendent, I don't know what it says, but I'm supposed to tell you that starting today you are being placed on administrative leave." She was informed that she was not allowed on Defendant's property, could not conduct "police work," could not access any computer, and could not speak about the matter to anyone. (*Id.* ¶¶ 45-56.)

On March 6, 2025, Plaintiff received a call from Detective Division Commander Jason Binder, who asked her to come to the facility for an "administrative review." The next day, she

and her attorney arrived to meet with Binder. He questioned her social media usage and asked whether she "searched" any members of the command staff on Facebook. He then began to reprimand her for an incident from February 2025, questioning whether she was on her cell phone between 12:38 and 12:48 p.m. on February 14, 2025. She informed him that she was not. He then questioned her about her conversation with Hildebrand. (*Id.* ¶¶ 58-65.)

A few days later, a police officer served her at her home with a summons to attend a *Loudermill* hearing,[2] where she was accused of violations of General Order 17, General Rule 25, Rules of Conduct – Truthfulness, and Disciplinary Procedure, accompanied by several misquotes of her conversation with Binder. Plaintiff and her attorney were not allowed to provide evidence disputing these claims and were directed to submit a written response. She did so and denied the allegations, stating that "the investigation was retaliatory for her invocation of leave under the FMLA and as a result of the discriminatory animus from Defendant's supervisory personnel under Title VII." (*Id.* ¶¶ 66-70.)

On April 3, 2025, Plaintiff was terminated from her employment and found liable for the above-mentioned violations. Plaintiff alleges that, since then, Defendant has engaged in a smear campaign that has prevented her from obtaining employment with police forces throughout Western Pennsylvania. She asserts that she has suffered substantial economic harm, including lost wages, lost benefits and the ability find comparable work. She also claims that her emotional and psychological conditions have been exacerbated by Defendant's conduct. (*Id.* ¶¶ 71-74.)

## III. Standard of Review

"Under Rule 12(b)(6), a motion to dismiss may be granted only if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the

[2] *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532 (1985).

plaintiff, a court finds that plaintiff's claims lack facial plausibility." *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)). "This requires a plaintiff to plead "sufficient factual matter to show that the claim is facially plausible," thus enabling "the court to draw the reasonable inference that the defendant is liable for misconduct alleged." *Id.* (quoting *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009)). While the complaint "does not need detailed factual allegations ... a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. *See also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

As noted by the Third Circuit in *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011), a 12(b)(6) inquiry includes identifying the elements of a claim, disregarding any allegations that are no more than conclusions and then reviewing the well-pleaded allegations of the complaint to evaluate whether the elements of the claim are sufficiently alleged. If a claim "is vulnerable to 12(b)(6) dismissal, a district court must permit a curative amendment, unless an amendment would be inequitable or futile." *Phillips v. County of Allegheny*, 515 F.3d 224, 236 (3d Cir. 2008) (citation omitted).

## IV. Discussion

### A. Timeliness of Claims

Both Title VII and the ADEA require a plaintiff to bring a charge of discrimination with the EEOC within 300 days of the alleged unlawful discriminatory practice. 42 U.S.C. § 2000e-5(e)(1); 29 U.S.C. § 626(d)(1)(B). *See Watson v. Eastman Kodak Co.*, 235 F.3d 851, 854 (3d Cir. 2000). Filing a charge with the EEOC is a prerequisite to bringing a civil action in court. 42 U.S.C. § 2000e-5(f)(1); 29 U.S.C. § 626(d)(1).

Defendant argues that because Plaintiff submitted her EEOC charge on September 10, 2025 (Am. Compl. ¶ 12), only discriminatory acts that occurred on or after November 14, 2024 are actionable. Therefore, it asserts, the only act that she can challenge is her termination on April 3, 2025.

Plaintiff notes that in addition to matters related to her termination, she has also pleaded a sexually hostile work environment, which "is composed of a series of separate acts that collectively constitute one 'unlawful employment practice.'" *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 117 (2002) (citation omitted). As the Supreme Court has held, "[p]rovided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability." *Id.* (footnote omitted). *See Rogers v. UPMC Altoona*, 2025 WL 1195519, at *5 (W.D. Pa. Apr. 8, 2025), *report and recommendation adopted*, 2025 WL 1194355 (W.D. Pa. Apr. 24, 2025) (refusing to dismiss hostile work environment claim as untimely when plaintiff alleged continuing violations over a period of several years).

Defendant contends that the events that allegedly occurred after November 14, 2024, namely her January 2025 performance evaluation and her April 3, 2025 termination, were discrete acts that do not count toward the sexually hostile work environment claim of a series of separate acts. However, Plaintiff has described her January 2025 negative performance evaluation not as a discrete act,[3] but as an extension of earlier meetings with her supervisor in which she was

[3] Indeed, as Defendant argues, it may not rise to the level of being an adverse employment action. *See Ponton v. AFSCME*, 395 F. App'x 867, 874 (3d Cir. 2010) (employee's negative evaluation did not constitute a materially adverse action inasmuch as he received an overall rating of "satisfactory," the highest rating available); *Nicholson v. Petco Animal Supplies Stores, Inc.*, 409 F. Supp. 3d 323, 332 (M.D. Pa. 2019) (written warning was not accompanied by any materially

questioned about her capability to perform her job because she was a woman. In addition, she alleges that, when she challenged the performance review, she was reprimanded for an arrest which occurred over six months before.

Based on these allegations, the Court cannot conclude at this juncture that Plaintiff failed to allege acts that contributed to a hostile work environment within 300 days of their occurrence. Furthermore, her termination on April 3, 2025 was undisputedly within the 300 days prior to her EEOC charge, so the Title VII and ADEA claims based on her termination are timely.

B. Sex Discrimination Claim

In Count I of the Amended Complaint, Plaintiff asserts a Title VII claim of sex discrimination. Pursuant to the provisions of Title VII, it is an unlawful employment practice for an employer to discharge or discriminate against any individual because of that individual's sex, 42 U.S.C. § 2000e-2(a)(1). In the absence of direct evidence of discrimination, a plaintiff may establish a prima facie case of discrimination indirectly following the shifting burden analysis set forth by the Supreme Court in *McDonnell Douglas v. Green*, 411 U.S. 792, 802 (1973).

The Court of Appeals for the Third Circuit has held that the existence of a prima facie case of employment discrimination is a question of law that requires a showing that:

> (1) the plaintiff belongs to a protected class; (2) he/she was qualified for the position; (3) he/she was subject to an adverse employment action despite being qualified; and (4) under circumstances that raise an inference of discriminatory action…

*Sarullo v. U.S. Postal Serv.*, 352 F.3d 789, 797 (3d Cir. 2003) (footnote and citations omitted). A prima facie case may be shown "by indirect evidence whose cumulative probative force, apart from the presumption's operation, would suffice under the controlling standard to support as a

adverse effect on employee's compensation, terms, conditions, or privileges of employment).

reasonable probability the inference" of discrimination. *Iadimarco v. Runyon*, 190 F.3d 151, 162 (3d Cir. 1999) (citation omitted). *See also LeBlanc v. Hill Sch.*, 2015 WL 144135, at *15 (E.D. Pa. Jan. 12, 2015) (to determine whether there was materially adverse employment action, the employer's actions may be considered in the aggregate).

Further, in order to defeat a motion to dismiss, it is sufficient, but not necessary, to allege a prima facie case. *Martinez v. UPMC Susquehanna*, 986 F.3d 261, 266 (3d Cir. 2021). "The complaint need only allege enough facts to 'raise a reasonable expectation that discovery will reveal evidence of [each] necessary element.'" *Id.* (citation omitted). *See also Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510 (2002) (establishing a prima facie case is an "evidentiary standard, not a pleading requirement.").

Here, the allegations of the Amended Complaint sufficiently support Plaintiff's Title VII claim. She asserts that she belongs to a protected class because she is a woman, that she was qualified for the position, that she was subjected to an adverse employment action when she was treated differently and less favorably than other employees, and that she was terminated. These facts, taken as true, raise an inference of discriminatory action.

Defendant contends that Plaintiff's allegations about her termination are insufficient because she fails to assert that it occurred under circumstances that give rise to an inference of discrimination. It cites *Johnson v. Montgomery County Ct. of Common Pleas*, 2022 WL 2192946, at *4 (E.D. Pa. June 17, 2022), in which a male alleged a sex discrimination claim solely on the basis that, "had he been a woman, his employer would have conducted an investigation into the false [physical assault] allegations." The court found this speculative allegation to be insufficient.

In this case, by contrast, Plaintiff has alleged that she was treated differently as a woman from the beginning of her employment. She was assigned non-designated officers which delayed

her promotion by at least two months; was subject to heightened scrutiny by Ruckel and Thornton; was told she violated protocol by reporting Officer Morrow's interference with her handling of a situation; was subjected to a verbal attack by Officer Gannon which she reported but was ignored; was falsely accused of using 43 days of FMLA leave and pushing her work onto others; and her mere inquiry about an investigation was used as an excuse to put her on administrative leave and terminate her employment. Thus, she is not merely hypothesizing that she would have received better treatment if she had been a man but has pleaded specific examples of the different treatment she received as a woman.

Defendant also argues that Plaintiff "has already provided a reason for her termination in her complaint, she inquired into an investigation she was not a part of, involving a family friend." (ECF No. 29 at 4.) However, Plaintiff has not alleged that this was the true reason for her termination. Rather, she has only claimed that this was Defendant's proffered justification.

Therefore, Defendant's motion to dismiss the sex discrimination claim will be denied.

C. <u>Hostile Work Environment Claim</u>

Count I of the Amended Complaint also alleges that Plaintiff was subjected to a sexually hostile work environment. A violation of Title VII may be established if a plaintiff can show that discrimination based on a protected characteristic created a hostile or abusive working environment. *Faragher v. City of Boca Raton*, 524 U.S. 775, 786 (1998). In order to succeed on such a claim:

> the plaintiff must establish that 1) the employee suffered intentional discrimination because of his/her sex, 2) the discrimination was severe or pervasive, 3) the discrimination detrimentally affected the plaintiff, 4) the discrimination would detrimentally affect a reasonable person in like circumstances, and 5) the existence of *respondeat superior* liability.

*Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 167 (3d Cir. 2013). *See also Faragher*, 524

U.S. at 786-87 & n.1. As held by the Supreme Court, courts are to consider "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993). "In evaluating a hostile work environment claim under . . . Title VII . . . we are mindful that offhanded comments, and isolated incidents (unless extremely serious) are not sufficient to sustain a hostile work environment claim." *Caver v. City of Trenton*, 420 F.3d 243, 262 (3d Cir. 2005) (quoting *Faragher*, 524 U.S. at 788). However, "a court must consider the totality of the circumstances." *Mandel*, 706 F.3d at 168.

Defendant contends that Plaintiff has failed to allege that the discriminatory conduct was based on her gender.[4] First, it argues that Plaintiff's allegations are insufficient to sustain a hostile work environment claim. According to Defendant, although Plaintiff states that she was paired with non-designated trainers and not allowed to attend the Bigs and Blues event, she fails to allege that these were "because of" her gender. This is not accurate: Plaintiff specifically indicates that "younger male officers were properly paired with designated Field Trainers (Am. Compl. ¶¶ 14, 82) and that "the officers who were allowed to attend the [Bigs and Blues] event were all younger male officers (*id.* ¶¶ 21, 83.) Defendant also argues that her interaction with Officer Morrow did not involve "any mention of gender." (ECF No. 20 at 7.) However, Plaintiff's allegation is that she reported Officer Morrow for interfering with her handling of a situation and she was the recipient of retraining, while he (a younger male officer) was not reprimanded.

[4] It notes that in *Kocher v. McDonough*, 2023 WL 3689702 (E.D. Pa. May 26, 2023), the court found that the plaintiff's allegations that a male supervisor stated he wanted to engage in weekly "marriage counseling" session with her and he screamed at female employees, but not male employees were both insufficient and also not sufficiently severe to state a claim. *Id.* at *5.

Defendant also argues that Officer Gannon's one-time use of the word "bitch" in an interaction with her is not sufficient to create a hostile work environment, citing *Onely v. Redner's Markets, Inc.*, 697 F. Supp. 3d 410, 431 (E.D. Pa. 2023) (single use of word "bitch" to a third party and not linked to an adverse employment action was neither severe nor pervasive); and *Eric v. Donsco Inc.*, 2010 WL 5018574, at *5 (M.D. Pa. Oct. 12, 2010), *report and recommendation adopted*, 2010 WL 5014292 (M.D. Pa. Dec. 3, 2010) (employee could not maintain a racially hostile work environment based on having his lunch stolen, having his radio broken, having glue placed on his lock, and being called names, to wit, "bitch" and "black monkey"). However, these cases were decided at the summary judgment stage with a fully developed record. Moreover, Plaintiff's allegation is not that Defendant should be held liable because Officer Gannon called her a "bitch" on one occasion, but that when she reported his behavior, her complaints were ignored and his actions were ratified. Moreover, her claim is not based solely on this incident.

Defendant also contends that the four instances cited by Plaintiff are not enough to satisfy the "pervasive" standard. It notes that in *Fusco v. Bucks County of Pennsylvania*, 2009 WL 4911938, at *10 (E.D. Pa. Dec. 18, 2009), the court granted summary judgment because the plaintiff failed to demonstrate that the events occurred regularly because she provided no dates for when they occurred. Here, however, Plaintiff has provided specific dates for some of the incidents she cites and general time periods for others.

In its reply brief, Defendant also argues that Plaintiff cannot maintain a hostile work environment claim based on alleged heightened scrutiny because "the job of police officer qualifies as a dangerous job." (ECF No. 29 at 5.) It notes that in *Campo v. Mid-Atlantic Packaging Specialties, LLC*, 564 F. Supp. 3d 362, 398 (E.D. Pa. 2021), which was decided on a motion for summary judgment, the court held that the plaintiff could not maintain a hostile work environment

claim based on his disability when the employer overly scrutinized his work, given that he was operating a dangerous machine (the corrugator).

*Campo* is inapplicable here, however. Plaintiff is not alleging that she was subjected to heightened scrutiny as compared to members of the public who do not have a dangerous job. Rather, her contention is that she was subjected to heightened scrutiny as a woman as compared to male police officers, all of whom have dangerous jobs.

Plaintiff has sufficiently alleged the elements of a sexually hostile work environment case. Whether the claim survives a motion for summary judgment on a fully developed record cannot be decided at this stage of the proceedings. Therefore, with respect to Count I, the partial motion to dismiss will also be denied as to the hostile work environment claim.

D. <u>Age Discrimination Claim</u>

In Count II, Plaintiff alleges a claim of age discrimination under the ADEA. Defendant argues that the claim must be dismissed because she the acts she cites are not age-related.

The ADEA prohibits discrimination against employees over the age of 40. 29 U.S.C § 631(a). Plaintiff was fifty-six years old at the relevant time. (Am. Compl. ¶ 121.)

Under *McDonnell Douglas*, as applied to claims under the ADEA, a plaintiff must plead and eventually prove that she: "(1) is a member of the protected class, i.e. at least 40 years of age, 29 U.S.C. § 631(a), (2) is qualified for the position, (3) suffered an adverse employment decision, and (4) in the case of a demotion or discharge, was replaced by a sufficiently younger person to create an inference of age discrimination." *Simpson v. Kay Jewelers, Sterling Div.*, *Inc.*, 142 F.3d 639, 644 n.5 (3d Cir. 1998); *see also Burton v. Teleflex, Inc.*, 707 F.3d 417, 426 (3d Cir. 2013).

Defendant argues that because Plaintiff has not alleged that she was replaced by a sufficiently younger person when she was terminated, she has failed to state a claim for age

discrimination. *See Estopinan v. Lakeland Bus Lines, Inc.*, 2017 WL 4220330, at *3 (D.N.J. Sept. 22, 2017) (dismissing ADEA claim that failed to allege this element of the cause of action); *Brzozowski v. Pennsylvania Tpk. Commission*, 2018 WL 6249849, at *16 (E.D. Pa. Nov. 28, 2018) ("While Mr. Brzozowski alleges adverse employment actions including a failure to promote and his termination, he fails to allege the Commission replaced him with a younger person.").

The Supreme Court has held that a plaintiff does not need to show that she was replaced by someone outside the protected class, that is, by someone under the age of forty. *See O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 313 (1996). Based on this holding, the Court of Appeals held that a woman suing under Title VII need not prove that she was replaced by a man, only that men were treated more favorably. *Pivirotto v. Innovative Sys., Inc.*, 191 F.3d 344, 354 & n.6 (3d Cir. 1999).

Plaintiff argues that she does not have to demonstrate that she was replaced by someone significantly younger because she does not allege that she was directly replaced. She cites a case holding that: "Where the plaintiff is not directly replaced, the fourth element is satisfied if the plaintiff can provide facts which if otherwise unexplained, are more likely than not based on the consideration of impermissible factors." *Willis v. UPMC Children's Hosp. of Pittsburgh*, 808 F.3d 638, 644 (3d Cir. 2015) (citation omitted). *See also Jeffery v. Erie Cnty. Pennsylvania*, 2024 WL 1257347, at *4 (W.D. Pa. Mar. 25, 2024) (plaintiff stated a claim by alleging that younger employees committed the same acts without reprimand, that the defendant had recently hired individuals in their 20s and that these younger individuals had been given more responsibilities).

Defendant argues that *Jeffery* is distinguishable because in that case the plaintiff alleged that younger employees who made the same mistakes she did were not reprimanded, that recent hires were in their twenties and that she was given work usually given to new hires. By contrast,

Plaintiff alleges that she was involved in altercations with her coworkers and she was routinely reprimanded but they were not. But Plaintiff *has* alleged that Officers Gannon and Morrow were younger than she was and also that "Plaintiff's younger male colleagues, who were involved in similar circumstances and incidents, were not reprimanded or administered retraining like Plaintiff was." (Am. Compl. ¶ 140.)

Thus, Plaintiff has stated a claim for age discrimination with respect to these incidents. With respect to her termination, the Court understands Plaintiff's argument to be that it was the result of discriminatory animus and younger employees who may have engaged in similar behavior were not terminated in these circumstances. This issue can be further explored on summary judgment, as appropriate, based on a fully developed record.

Therefore, with respect to Count II of the Amended Complaint, the motion will be denied.

## V. **Conclusion**

For these reasons, Defendant's partial motion to dismiss the Amended Complaint will be denied.

An appropriate order follows.

Date: October 28, 2026

/s/Patricia L. Dodge
PATRICIA L. DODGE
CHIEF UNITED STATES MAGISTRATE JUDGE